[No. 21276. Department Two. February 21, 1928.]

J. C. HUDSON *et al.*, *Respondents*, v. PACIFIC TRUCK & TRACTOR COMPANY, *Appellant*.[1]

*Ben Driftmier*, for appellant.
*H. C. Barney*, for respondents.

[1]Reported in 274 Pac. 789.

HOLCOMB, J.—Respondents sued to recover one thousand two hundred seventeen dollars and forty-nine cents alleged to be owing to them by appellant on account of services rendered and moneys advanced. Substantially the whole amount claimed was for services rendered by respondent J. C. Hudson. He will hereinafter be referred to as if the only respondent. The case was tried to a jury, resulting in a verdict in favor of respondent for four hundred eighty-two dollars and forty-nine cents, upon which judgment was rendered against appellant.

At the conclusion of respondent's case, appellant moved for a nonsuit upon two grounds: (1) that respondent's claim was based upon an alleged contract made with the corporation in June, 1922, whereas the corporation was not organized until September, 1922; (2) that respondent failed to establish any items of his claim. The motion for nonsuit was denied. Upon the return of the verdict of the jury in favor of respondent, appellant moved for a new trial and for judgment *n. o. v.*, which motions were denied. The denial of the motions made by appellant and in entering judgment against it, are the errors assigned.

The issues raised by the pleadings, as succinctly stated by the trial court, are as follows: Respondent seeks recovery of a balance alleged to be due from appellant for services rendered between June 1, 1922, and November 1, 1924, respondent claiming that he performed services for appellant during that time for which he was to receive one hundred dollars per month, and upon which there is a balance due and owing of one thousand two hundred seventeen dollars and forty-nine cents. Appellant denies the hiring of respondent in the manner claimed by him in his complaint, but does admit that it agreed to pay respondent for serv-

ices, for a limited time, as a caretaker at its plant, during and so long as it had funds with which to pay for his services, and that it fulfilled such agreement with respondent; that, after the funds appellant had on hand were exhausted, respondent continued the operation of appellant's plant as a private business, but at no time was such continued operation authorized, ordered or directed by appellant, excepting only that it permitted respondent to use the plant for his own business, as previously stated.

It will thus be seen that the primary question upon which a determination depends, is a question of fact which was resolved by the jury in favor of respondent, to wit, the nature of the contract, if any, existing between the parties. While there is some evidence to the contrary, there is evidence justifying the jury in finding that the contract was made by respondent with appellant on June 1, 1922, and continued, by reception of the same services by appellant for its benefit, until about November 1, 1924. It is true that, on June 1, 1922, appellant corporation had not then been organized. Prior to that time, the Western Iron Works, a corporation, owned and operated a machine shop and manufacturing plant at Anacortes, where it was engaged in the manufacture of automobile trucks. That company became insolvent, and respondent was appointed receiver thereof.

A short time prior to June 1, 1922, a group of men got together and raised money with which to purchase the plant, one Bertheson acting as trustee, and buying the plant in his own name for the group. At that time the organization of a corporation was contemplated, and, some time prior to September, 1922, articles of incorporation were perfected, the five trustees named in the articles being H. C. Bertheson, C. G. Lund, A. J.

Brown, George V. Whittle, and respondent. Between June 1 and September 5, 1922, the same five men named in the articles of incorporation held regular meetings, and throughout the trial referred to those meetings as meetings of the company. At a meeting held June 1, 1922, there being no insurance on the plant and equipment, and there being a considerable amount of personal property, such as machinery, located in the plant, respondent was employed, at a salary of one hundred dollars per month, to look after the same and act as watchman and caretaker thereof.

From that date on, respondent performed such duties, and from time to time received money for his services from Bertheson. At a meeting of the trustees of appellant, about the middle of September, 1922, it was decided to take in job work at the company's plant, and that respondent should be in charge; and he was directed to collect pay for such work, and to take care of, and account for, such moneys as should be received and expenses incurred. Thereafter, respondent, acting on behalf of appellant, took in various kinds of job work, performed work thereon, collected the moneys therefor, and deposited the same in a bank in the company's name. He paid out a portion of the receipts for such work for the necessary expenses, and retained a portion to apply on his wages. Respondent kept an account book of all receipts and expenditures while he operated the plant for the company, and made an accounting, upon demand of appellant after his action was commenced, to appellant. Upon the plant being leased, about November 1, 1924, to another concern, respondent's services ceased.

Appellant vigorously contends that a contract made in June could not be a contract of a corporation organized in September, and, supporting this contention, cites *Bash v. Culver Gold Mining Co.*, 7 Wash. 122, 34

Pac. 462. In that case, it was held that a corporation cannot be rendered liable upon a contract between stockholders prior to incorporation, when there is no corporate act recognizing such liability.

We think it unnecessary to decide whether the promoters of the subsequently organized corporation constituted a *de facto* corporation from June to September 5, 1922.

An admission and also an affirmative allegation in the amended answer of appellant to the amended complaint, are both expressly to the effect that appellant employed respondent on or about June 1, 1922, and that it, from time to time, commencing July 27, 1922, paid respondent certain sums, as specifically set forth in the affirmative defense. These admissions are binding upon appellant, since no amendment was made or asked.

There was ample evidence to warrant the jury in finding that, after its organization in September, 1922, appellant became liable, itself, for the services rendered by respondent to appellant as caretaker of the property.

All of the labor and services so rendered were of such nature as to be clearly outside the ordinary legal duties of a director, as such. *Brown v. Wilcox Lumber & Logging Co.*, 118 Wash. 336, 203 Pac. 949.

Although appellant now contends that the payments made to respondent out of corporate funds by one of its officers, were made without authority, that contention seems to be inconsistent with the allegations in its affirmative defense; and furthermore it was a question of fact for the jury to determine. The same observations apply to the question of whether or not the employment of respondent continued for a longer time than is contended by appellant.

The issues tendered by the pleadings, and such facts

as were in any way in dispute, were submitted to the jury under instructions which were not even excepted to, and determined in favor of respondent.

We find no error.

Affirmed.

BEALS, MAIN, and FULLERTON, JJ., concur.